UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOISE BLANDON,

                    Plaintiff,

        v.

MICHAEL AITCHISON, ICP Supervisor;
MICHAEL CAPRA, Superintendent; S.
COUSINS, Lieutenant; SYLVESTER
JOHNSON, Sergeant; RONALD LEROUGE,
Correction Officer; QUADRENA T. QUICK,
IGP Supervisor,

                    Defendants.

No. 17-CV-65 (KMK)

OPINION AND ORDER

Appearances:

Moise Blandon
Ossining, NY
*Pro Se Plaintiff*

Bruce J. Turkle, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Moise Blandon ("Plaintiff"), currently incarcerated at Sing Sing

Correctional Facility, filed the instant Amended Complaint ("Amended Complaint"), pursuant to

42 U.S.C. § 1983, against Superintendent Michael Capra ("Capra"), Intermediate Care Program

("ICP") Supervisor Michael Aitchison ("Aitchison"), Lieutenant S. Cousins ("Cousins"),

Correction Officer Lerouge R. ("Lerouge"), Sergeant Sylvester Johnson ("Johnson"), and Inmate

Grievance Program ("IGP") Supervisor Quadrena T. Quick ("Quick") (collectively,

"Defendants") (Am. Compl. (Dkt. No. 52).)  Plaintiff alleges that Defendants violated his rights

under the First, Eighth, and Fourteenth Amendments, as well as under the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, when they allegedly failed to protect him

from an HIV and Hepatitis C-infected inmate, "Ebanks," who entered Plaintiff's cell and bit his

face, and when they subsequently prevented him from timely filing an inmate grievance relating

to the incident in order to exhaust his administrative remedies. (*See generally* Am. Compl.)

Before the Court is Defendants' Motion To Dismiss the Amended Complaint Pursuant to

Federal Rule of Civil Procedure 12(b)(6). (*See* Not. of Mot. (Dkt. No. 67); Mem. of Law in

Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 68).) Defendants argue that

Plaintiff's Amended Complaint fails to allege the personal involvement of Capra, Aitchison, and

Cousins in any constitutional violation, and fails to state a claim as to all Defendants. (*See*

*generally* Defs.' Mem.) For the following reasons, Defendants' Motion is granted in part and

denied in part.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true

for the purpose of resolving the instant Motion. The Court assumes familiarity with the facts

underlying its November 20, 2017 Opinion and Order dismissing Plaintiff's original Complaint.

(*See* Nov. 20, 2017 Op. & Order ("Opinion") 3–5 (Dkt. No. 30).)

Plaintiff is a prisoner incarcerated at Sing Sing Correctional Facility, and, due to his

intellectual disability, was, at the time of the alleged events, in the custody of the Intermediate

Care Program ("ICP"), which worked with the Office of Mental Health ("OMH"). (Am. Compl.

¶¶ 7, 19; *see also* Opinion 3.) On June 14, 2016, while Plaintiff was confined to his cell,

"Ebanks ran into [Plaintiff's] cell" and bit his face, "causing 2 by 2 inches deep teeth-punctures,

bleeding, and permanent disfigurement." (Am. Compl. ¶¶ 15–16.) The attack occurred shortly after the 5:00 p.m. "Medication Run"; although inmates typically "have no free movement" during the Medication Run, Ebanks was allowed to return to his cell "unescorted." (*Id.* ¶ 23.) Lerouge, who was on duty at the time, allegedly "did not secure" the inmates that day, and a witness later informed Cousins that he overheard Lerouge tell Ebanks, "I know you have issues on the Unit. I'm leaving the cells open. Go handle your business." (*Id.* ¶¶ 22, 23.) Defendants "had prior knowledge of Ebanks being a highly volatile inmate infected with HIV" based on his prior conduct, including attacks on staff and other inmates, and because he allegedly "screams out of his cell repeatedly every day that he has HIV to threaten staff and inmates." (*Id.* ¶ 21.)

Following the incident, Lerouge wrote an Inmate Misbehavior Report ("IMR") against Plaintiff "for fighting and violent conduct" in order "to conceal his liability for the assault and his lack of supervision and training." (*Id.* ¶ 25.) Johnson was the area supervisor at the time, and allegedly failed to give orders to Lerouge to secure the ICP inmates in their cells or to prevent the attack, and later signed the IMR written by Lerouge. (*Id.* ¶¶ 24, 25.) Cousins ultimately reviewed the IMR and cleared Plaintiff of misconduct, but then allegedly "concealed, modified, spoiled, or destroyed the record of [a] confidential witness[] interview" in relation to the investigation. (*Id.* ¶ 26.)

On June 20, 2016, Plaintiff filed a grievance with Quick concerning the attack "for her to process and file." (*Id.* ¶ 27.) However, Quick "held" the grievance "until mid[-]July 2016" and then returned it to Plaintiff, "telling him it was untimely." (*Id.* ¶ 28.) Plaintiff remained unaware of the status of his grievance "until Karen Bellamy, the CORC Supervisor, sent him a letter responding to his inquiry about it." (*Id.*)

B. Procedural Background

Plaintiff filed his original Complaint on January 3, 2017, asserting claims against Capra, Lerouge, and Johnson, as well as three John Doe Defendants. (Compl. (Dkt. No. 2.)) The Court granted Plaintiff's request to proceed in forma pauperis on January 26, 2017. (Dkt. No. 6.) On November 20, 2017, the Court granted Defendants' Motion To Dismiss the original Complaint without prejudice. (*See generally* Opinion.) The Court dismissed Plaintiff's claims against Capra for lack of personal involvement. (*Id.* at 13–16.) The Court dismissed Plaintiff's Eighth Amendment claim against Lerouge, finding that although the Complaint "plausibly allege[d] that Defendants . . . were aware that attacks on other ICP inmates were foreseeable," absent enforcement of ICP policies requiring supervision and separation of ICP inmates, Plaintiff alleged only negligence in failing to secure Ebanks in his cell, which "cannot constitute deliberate indifference." (*Id.* at 21–22.) The Court also dismissed Plaintiff's Eighth Amendment claim against Johnson, explaining that Plaintiff "provide[d] only general allegations, without any factual detail, of Johnson's purported lack of supervision, and merely labels these actions illegal or unconstitutional." (*Id.* at 23.) Finally, the Court dismissed Plaintiff's substantive due process claim as duplicative of "Plaintiff's Eighth Amendment claim for failure to protect and deliberate indifference," and dismissed any possible procedural due process claim on the basis that "Plaintiff does not possess a protected liberty interest in having Defendants follow prison policy." (*Id.* at 24–26.)

On May 18, 2018, Plaintiff filed the operative Amended Complaint, adding Defendants Cousins, Aitchison, and Quick, and asserting claims under the First, Eighth, and Fourteenth Amendments, as well as under the ADA. (*See* Am. Compl.) On August 31, 2018, Defendants filed the instant Motion to Dismiss the Amended Complaint. (Not. of Mot.; Defs.' Mem.) On

November 1, 2018, after Plaintiff failed to file an opposition, Defendants filed a letter asking the Court to deem the Defendants' Motion To Dismiss fully submitted without opposition, (Dkt. No. 70), which the Court granted the same day, (Dkt. No. 71). On November 16, 2018, Plaintiff filed a letter asking the Court to decide the Motion To Dismiss without opposition, stating that "the facts in the [A]mended [C]omplaint are sufficient," (Dkt. No. 72), and the Court confirmed it would treat the Motion as fully submitted, (Dkt. No. 73).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same).  And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted).  However, when the complaint is pro se, the Court may consider "materials

outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). Finally, the "failure to oppose Defendants' [M]otion [T]o [D]ismiss does not, by itself, require the dismissal of [Plaintiff's] claims." *Leach v. City of New York*, No. 12-CV-2141, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013). Rather, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

B. Analysis

1. Personal Involvement of Defendants Capra, Aitchison, and Cousins

Defendants Capra, Aitchison, and Cousins argue that the Amended Complaint should be dismissed against them because Plaintiff does not sufficiently allege their personal involvement in any of the alleged constitutional violations. (Defs.' Mem. 5–8.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and quotation marks omitted). In other words, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "The personal involvement and liability of supervisory personnel is established when the supervisory official has 'actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act.'" *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) (quoting *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)).

With respect to Capra, the Court found that Plaintiff's original Complaint "contain[ed] no allegations that Capra was personally involved in the alleged violations of Plaintiff's constitutional rights," (Opinion 15), as it merely alleged that Capra was "the policymaker therefrom and failed to take any proactive action to remedy the wrong," (*id.* (quoting Compl. ¶ 9)). Aitchison and Cousins were not Defendants in the original Complaint.

Plaintiff now alleges that "Capra and Aitchison jointly govern and operate ICP at Sing Sing," and that they "conducted a background information study of Ebanks['s] medical and mental health records to determine his ICP eligibility, and the remedial planning and treatment for him." (Am. Compl. ¶¶ 19–20.) Plaintiff also alleges that Capra and Aitchison "made tours of ICP once a week" and "[w]eekly . . . stopped at Ebanks['s] cell to discuss his highly volatile behavior toward himself, staff, and other inmates" throughout Plaintiff's 16 months in ICP, but failed to give orders to "remove him from ICP or to move him to a more restrictive residential mental health treatment unit." (*Id.* ¶¶ 31–33.) Plaintiff also alleges that Capra and Johnson "were acquiescent to and did not supervise and train Defendant Lerouge regarding ICP and its residents." (*Id.* ¶ 34.)

Construing Plaintiff's submission liberally, the Amended Complaint sufficiently pleads the personal involvement of Capra and Aitchison in the alleged constitutional violation. Defendants, citing *Grullon*, argue that "Plaintiff fails to allege that Capra and Aitchison . . . knew that Ebanks had a propensity to assault, let alone bite, other inmates . . . or . . . failed to act on information indicating that the alleged assault was occurring, or might occur." (Defs.' Mem. 6.) However, Plaintiff clearly alleges that Capra and Aitchison personally "performed the screening process of Ebanks" before placing him in ICP, that they spoke to Ebanks weekly about his volatile conduct, and that Ebanks was involved in several specific incidents, including a fight with another inmate that required Ebanks to be moved to another section of ICP, that plausibly put Capra and Aitchison on notice that Ebanks posed a threat to other inmates. (Am. Compl. ¶¶ 20, 21, 31, and 32.) Plaintiff also identifies more restrictive residential mental health treatment units to which Ebanks could have been assigned by Capra and Aitchison. (*See* Am. Compl. ¶ 33.) *See also* 7 N.Y.C.R.R. 320.5 (describing the "intensive intermediate care program"). If, as Plaintiff alleges, Ebanks was indeed a known risk to other inmates and Capra and Aitchison failed to sufficiently remedy the issue, they may be liable for constitutional violations resulting from their inaction. *See Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013) (noting supervisors may be liable where "there had been a history of previous episodes putting the defendants on notice of the problem" (citation and quotation marks omitted)); *Mock v. Axelrod*, No. 86-CV-2768, 1988 WL 18891, at *3 (S.D.N.Y. Feb. 23, 1988) (noting that "prison supervisors may be liable if they knew or should have known of assaults being perpetrated upon prisoners" (quotation marks omitted)). Construing Plaintiff's Amended Complaint liberally to assert the strongest arguments it suggests, *see Sykes*, 723 F.3d at

403, the Court finds that Plaintiff has plausibly alleged Capra's and Aitchison's personal involvement in the purported constitutional violation.

However, with respect to Cousins, Plaintiff has failed to sufficiently allege personal involvement in a constitutional violation. Plaintiff's only allegations against Cousins relate to his oversight of the investigation into Plaintiff's alleged assault. Plaintiff alleges that Cousins "found [Plaintiff] not guilty of the charges" in the IMR, but that "he concealed, modified, spoiled, or destroyed the record of the confidential witness[] interview" conducted pursuant to an investigation into the incident, in which a witness reported hearing Lerouge tell Ebanks that he would leave the cell doors open to allow Ebanks to "handle [his] business." (Am. Compl. ¶¶ 22, 26.) Plaintiff's allegation that Cousins destroyed the witness interview materials, without additional facts, does not demonstrate his involvement in any constitutional violation and is thus insufficient to withstand a motion to dismiss. Even assuming Plaintiff's allegation is true, Plaintiff does not explain how Cousins's concealment or destruction of witness interview materials *after* he cleared Plaintiff of misbehavior violated Plaintiff's constitutional rights. Plaintiff asserts that "[t]he law requires preservation of the record of the confidential witness' interview to meet the demands of due process," and that Cousins's conduct "prevents Blandon from proving Defendant Lerouge's liability partly." (*Id.* ¶ 26 (emphasis omitted).) The Court is not aware of any caselaw holding that concealment or destruction of a witness interview *after* completion of an inmate disciplinary hearing at which the inmate was found not guilty, standing alone, violates the Constitution. Plaintiff has identified no liberty or property interest that he was denied as a result of the alleged concealment of the confidential witness interview materials. *Zimmerman v. Burge*, No. 06-CV-176, 2008 WL 850677, at *2 (N.D.N.Y. Mar. 28, 2008) (noting that a prisoner "cannot state a claim for procedural due process without first establishing

that he has been denied a liberty or property interest"). On the contrary, Plaintiff's disciplinary hearing terminated in his favor.

To the extent Plaintiff alleges that the concealment of the witness interview prevents this Court from considering it in connection with Plaintiff's claims against Lerouge, thereby violating his right of access to the Courts, Plaintiff still fails to sufficiently allege a constitutional violation. "When asserting a claim for deprivation of the right to access the courts, a plaintiff must allege facts sufficient to show that he suffered an actual injury." *McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *23 (S.D.N.Y. Mar. 31, 2016); *see also Anderson v. Leghorn*, No. 07-CV-1184, 2011 WL 691658, at *3 (N.D.N.Y. Jan. 24, 2011) ("To establish standing for a claim for denial of right of access to courts, an inmate must show that he has suffered an actual injury traceable to the challenged conduct of prison officials—that is, that a 'nonfrivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials." (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996))), *adopted by* 2011 WL 691653 (N.D.N.Y. Feb. 18, 2011). Here, Plaintiff has not sufficiently alleged an actual injury. The Second Circuit has not formally recognized "backward-looking right of access" claims based on official action that "caused the loss or inadequate settlement of a meritorious case," but has noted that even if recognized, "such claims are available only if a judicial remedy was completely foreclosed by the false statement or nondisclosure." *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012) (citation and quotation marks omitted). At best, Plaintiff's claim is "premature" because the destruction of the witness interview materials has not yet deprived Plaintiff of the opportunity to litigate a meritorious cause of action; indeed, the Court presumes at this stage that Plaintiff's allegation regarding what the confidential witness said about Lerouge's conduct is true and, as discussed below, denies Defendants' Motion as to Lerouge on that basis. *See Sousa*, 702

11

F.3d at 128–29 (holding the plaintiff failed to state a backward-looking right-of-access claim based on allegations that "the government concealed or manipulated relevant facts" where the plaintiff was sufficiently "aware of the facts giving rise to his claim" at the time he brought his lawsuit); *Braun v. Sterno*, No. 18-CV-919, 2018 WL 5778248, at *7 (D. Conn. Nov. 2, 2018) (finding a due process claim based on denial of access to the courts "premature . . . [b]ecause the court is permitting his First Amendment claim to proceed against [the defendant], [and therefore] the destruction of [evidence] has not yet deprived [the plaintiff] of any opportunity to litigate a nonfrivolous cause of action"); *Brown v. Volpe*, No. 15-CV-9004, 2017 WL 985895, at *4 (S.D.N.Y. Mar. 13, 2017) (dismissing right-of-access claim where the plaintiff "has filed a civil action—this very action—against both [defendants]" who allegedly tampered with evidence that would support his claims against them); *McNaughton v. de Blasio*, No. 14-CV-221, 2015 WL 468890, at *12 (S.D.N.Y. Feb. 4, 2015) ("[The] [p]laintiff has not alleged in his [a]mended [c]omplaint . . . that the loss or destruction by the NYPD of any evidence has completely foreclosed his ability to bring his other constitutional claims, and the filing of the instant suit would belie any such argument."), *aff'd*, 644 F. App'x 32 (2d Cir. 2016); *Vallade v. Fischer*, No. 12-CV-231, 2014 WL 5481881, at *16 (W.D.N.Y. Oct. 29, 2014) (holding that "even if [evidence] was willfully destroyed in an effort to cover-up [the] defendants' conduct, [the] plaintiff has not established that this caused him to lose or inadequately settle a meritorious action, since his underlying Eighth Amendment claim . . . remains pending"). Therefore, Plaintiff's claims against Cousins are dismissed.

## 2. Eighth Amendment

Defendants argue that the Amended Complaint fails to state a claim under the Eighth Amendment because Plaintiff fails to indicate that "the assault on him was anything other than a

surprise attack" of which Defendants had no notice.  (*See* Defs.' Mem. 8–13.)  The Eighth

Amendment, which prohibits cruel and unusual punishment, requires prison officials to "take

reasonable measures to guarantee the safety of inmates in their custody."  *Hayes v. N.Y.C. Dep't*

*of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994)

(same).  Specifically, "[p]rison officials have a duty to protect prisoners from violence at the

hands of other inmates since being violently assaulted in prison is 'simply not part of the penalty

that criminal offenders pay for their offenses against society.'"  *Lee v. Artuz*, No. 96-CV-8604,

2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting *Farmer*, 511 U.S. at 834).  However,

"not . . . every injury suffered by one prisoner at the hands of another . . . translates into

constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S.

at 834.  Instead, "the prisoner must allege actions or omissions sufficient to demonstrate

deliberate indifference; mere negligence will not suffice."  *Hayes*, 84 F.3d at 620; *see also Price*

*v. Oropallo*, No. 13-CV-563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014) ("Prison

officials are liable under the Eighth Amendment for harm incurred by an inmate if they act with

deliberate indifference to the inmate's safety.").

　　　　To satisfy the deliberate indifference standard, a plaintiff must show that (1) "he is

incarcerated under conditions posing a substantial risk of serious harm" and (2) "the defendant

prison officials possessed sufficient culpable intent."  *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511

U.S. at 834).  The first prong is objective and requires that prison officials provide inmates with

"basic human needs, one of which is 'reasonable safety.'"  *Helling v. McKinney*, 509 U.S. 25, 33

(1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200

(1989)).  "The second prong of the deliberate indifference test, culpable intent, in turn, involves a

two-tier inquiry."  *Hayes*, 84 F.3d at 620.  "Specifically, a prison official has sufficient culpable

intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id.* As the Supreme Court has made clear, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Price*, 2014 WL 4146276, at *8 (explaining that to establish deliberate indifference, "a plaintiff must prove that the defendant official actually knew of and disregarded an excessive risk of harm to the plaintiff's safety"). A defendant's knowledge can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." (quotation marks omitted)).

As in their Motion To Dismiss the original Complaint, Defendants do not contest that the Amended Complaint plausibly alleges facts satisfying the objective prong of the deliberate indifference test, (*see* Opinion 18), but rather argue that Plaintiff has failed to sufficiently allege the subjective prong, because he does not allege that Defendants had knowledge of prior incidents between Ebanks and Plaintiff that would have put Defendants on notice that Ebanks "posed a substantial risk of harm to Plaintiff, or that the Defendants in fact drew that inference," (Defs.' Mem. 9).

Although Plaintiff does not allege any specific altercations between himself and Ebanks, "[a] plaintiff may also state a claim for deliberate indifference based on a failure to protect him against a general risk of harm to all inmates at the facility." *Parris*, 947 F. Supp. 2d at 363. "To do so, a plaintiff must allege that the defendants knew of a history of prior inmate-on-inmate

14

attacks similar to the one suffered by the plaintiff and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff." *Id.*; *see also Farmer*, 511 U.S. at 843 (noting that a prison official may not "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the [plaintiff] was especially likely to be assaulted by the specific prisoner who eventually committed the assault"). The Amended Complaint identifies several specific incidents of Ebanks's behavior that could suggest that Ebanks at least posed a general risk to other inmates. (*See* Am. Compl. ¶ 21.) These include references to the fact that Ebanks regularly screamed out his HIV-positive status in his cell "to threaten staff and inmates," that he was on "keeplock" status for assaulting another inmate, that he once set fire to his cell, that he once threw feces at ICP corrections officers, and that he was moved to D-Company South, the same area where Plaintiff is housed, because of a fight with another inmate. (*Id.*) Plaintiff also alleges that Capra and Aitchison performed the screening process that led to Ebanks's designation to ICP, and that Capra, Aitchison, and Johnson regularly discussed Ebanks's "volatile behavior" with Ebanks. (*Id.* ¶¶ 20, 32.)

However, in order to find that a plaintiff has sufficiently pled a claim for deliberate indifference based on a failure to protect him against a general risk of harm to all inmates, courts typically require specific allegations of a pattern of analogous inmate-on-inmate attacks that would make the attack suffered by the plaintiff foreseeable. *See, e.g.*, *Hosannah v. Nassau Cty. Criminal Supreme Court Sergeant Officer(s)*, No. 16-CV-1045, 2017 WL 3207966, at *12 (E.D.N.Y. July 5, 2017), *adopted sub nom. Hosanna v. Sposato*, 2017 WL 3207750 (E.D.N.Y. July 26, 2017) (dismissing deliberate indifference claim where the plaintiff did not "plead facts sufficient to suggest . . . that there were other attacks against prisoners who held the same

'escape risk' status as [the] [p]laintiff"); *Parris*, 947 F. Supp. 2d at 363 (dismissing deliberate indifference claim where the plaintiff "fail[ed] to allege that there is a history of serious inmate-on-inmate assaults in the six block yard [where the plaintiff was attacked], that the defendants knew of any such history, or that such prior assaults were similar enough to the attack he suffered that remedial actions would have prevented that attack").

The Court need not decide this issue with respect to Capra, Aitchison, or Johnson because Plaintiff has not sufficiently alleged that they disregarded any alleged risk of serious harm. In fact, Plaintiff's allegations demonstrate that Sing Sing frequently addressed Ebanks's violent behavior and had policies in place to protect other inmates, and that the attack on Plaintiff only occurred because Lerouge allegedly acted in direct violation of existing policy. Plaintiff alleges no facts supporting an inference that Capra, Aitchison, or Johnson were aware of and either ignored or encouraged Lerouge's alleged misconduct, save for one conclusory allegation that "Capra, Aitchison, and Johnson were acquiescent to and did not supervise and train Defendant Lerouge regarding ICP and its residents." (*See* Am. Compl. ¶¶ 20, 21, 23, 31, 32, 34.) Plaintiff acknowledges that Ebanks was on "keeplock" status at the time of the assault, a restricted status which "isolates unruly prisoners to their[] cells and prevents personal encounters with ICP's residents." (Opinion 4 (quoting Compl. ¶ 13).) He also had been moved to D-Company South after an altercation with another inmate. (Am. Compl. ¶ 21.) Sing Sing also allegedly did not allow inmates "free movement" during the Medication Run, and the attack on Plaintiff only occurred because "Lerouge did not secure D-Company inmates or Ebanks to their cells" in spite of ICP policy and Ebanks's keeplock status. (*Id.* ¶ 23.) At most, the general failure to place Ebanks in a more restricted environment to prevent injury to any other inmates constitutes negligence, which is insufficient to state a claim. *See Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir.

16

2012) ("Deliberate indifference requires 'more than mere negligence.'" (quoting *Farmer*, 511 U.S. at 835)); *Wilkins v. Poole*, 706 F. Supp. 2d 314, 319 (W.D.N.Y. 2010) (finding that the plaintiff failed to state a claim because, "even assuming arguendo that the defendants were equally aware of the general dangers of prison life," the plaintiff failed to allege "that the defendants were aware of specific deficiencies in [prison] policies and failed to act" (italics omitted)); *Cardew v. Fleetwood*, No. 98-CV-4704, 2001 WL 533728, at *3 (S.D.N.Y. May 17, 2001) (dismissing deliberate indifference claim where the defendant failed to secure an inmate on keeplock status because the conduct "was at most negligent"). Absent allegations that Capra, Aitchison, or Johnson knew of Lerouge's plan to leave the cells open and failed to intervene, Plaintiff has failed to allege that they "possessed sufficient culpable intent." *Hayes*, 84 F.3d at 620.

Plaintiff's conclusory allegation that Capra, Aitchison, and Johnson failed to supervise and train Lerouge also fails to state an Eighth Amendment claim against them. (*See* Am. Compl. ¶ 34.) Although grossly negligent supervision can support § 1983 liability, "one phrase of boilerplate . . . is insufficient to plead a deliberate-indifference claim under a failure-to-train or failure-to-supervise theory." *Stephens v. Venettozzi,* No. 13-CV-5779, 2016 WL 929268, at *22 (S.D.N.Y. Feb. 24, 2016) (dismissing failure to protect claim based on failure-to-supervise theory where the plaintiff "d[id] not . . . describe the nature of the training or supervision that [the defendant] provided to the officers who allegedly violated his rights, explain why that training or supervision was deficient, or provide any facts directly connecting the actions of [the defendant's] subordinates to a failure of training or supervision"), *adopted by* 2016 WL 4272376 (S.D.N.Y. Aug. 5, 2016); *see also Randle v. Alexander*, 960 F. Supp. 2d 457, 478 (S.D.N.Y. 2013) (dismissing § 1983 claim for failure to supervise where the "allegations constitute nothing

more than recitations of the applicable standard without supporting factual context"). Plaintiff

does assert that "[t]he policies and laws governing ICP require strict training for at least eight (8)

hours several times a year of all staff interacting with ICP and its residents," (Am. Compl. ¶ 35),

but does not allege that Lerouge did not receive that training or specify how his training was

deficient. Nor does Plaintiff explain how Lerouge's deficient training caused Plaintiff's injury;

on the contrary, Plaintiff alleges that Lerouge *intentionally* acted in violation of established

prison policy for the purpose of allowing Ebanks to attack other inmates. *See Reynolds v.

Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007) (noting that in order to establish deliberate

indifference on a failure to train or supervise theory, a plaintiff must allege that the defendant's

"inadequate supervision actually caused or was the moving force behind the alleged violations"

(citations omitted)); *Stephens*, 2016 WL 929268, at *22 (dismissing deliberate indifference claim

where the "[p]laintiff does not, for example, describe the nature of the training or supervision

that [the supervisor] provided to the officers who allegedly violated his rights, explain why that

training or supervision was deficient, or provide any facts directly connecting the actions of [the

supervisor]'s subordinates to a failure of training or supervision"); *Randle*, 960 F. Supp. 2d at

479 (dismissing deliberate indifference claim against supervisor on failure-to-train and failure-to-

supervise theories where it was "implausible" that the supervisor would have been aware of a

practice of encouraging inmate-on-inmate violence among a subset of prison guards, especially

given guards' "alleged cover-up of the incident" involving the plaintiff). Although Plaintiff

alleges that Johnson was "on the ICP Unit" that day but failed to order Lerouge to secure the ICP

inmates or sufficiently supervise Lerouge in his duties to prevent the attack, (Am. Compl. ¶ 24),

there are no allegations that Johnson knew or had reason to believe that Lerouge would

intentionally violate ICP policy for the express purpose of facilitating an inmate-on-inmate

attack, *see Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) (concluding that, "[t]o the extent that the [plaintiff] attempts to assert a failure-to-supervise claim . . . , it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [the plaintiff's] constitutional rights"); *Fortunato v. Bernstein*, No. 12-CV-1630, 2015 WL 5813376, at *6 (S.D.N.Y. Sept. 1, 2015) ("Supervisory status, without more, is not sufficient to subject a defendant to [§] 1983 liability." (quotation marks omitted)). Plaintiff therefore fails to state an Eighth Amendment claim against Capra, Aitchison, or Johnson.

On the other hand, with respect to Lerouge, Plaintiff has sufficiently pleaded an Eighth Amendment claim. Defendants argue that the Amended Complaint "still fails to allege that Lerouge was present during the alleged assault, and merely repeats the allegation that immediately preceding the incident, Lerouge 'did not secure D-Company inmates or Ebanks to their cells despite ICP being a high security risk area.'" (Defs.' Mem. 12–13 (quoting Am. Compl. ¶ 23).) Defendants fail to address the newly added allegation that a witness indicated he overheard Lerouge tell Ebanks shortly before the attack on Plaintiff, "I know you have issues on the Unit. I'm leaving the cells open. Go handle your business." (Am. Compl. ¶ 22.) Taking all allegations in the Amended Complaint as true, this statement plausibly demonstrates that Lerouge acted with the requisite intent to constitute deliberate indifference in violation of the Eighth Amendment. *See Graham v. Coughlin*, No. 86-CV-163, 2000 WL 1473723, at *5 (S.D.N.Y. Sept. 29, 2000) ("In situations where corrections officers have deliberately left cell[] doors open in order to leave a prisoner vulnerable to vicious attack, the courts rightly have expressed outrage."); *see also Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988) ("An inmate's claim based on negligence, however, 'is quite different from one involving injuries caused by another prisoner where officials simply stood by and permitted the

attack to proceed.'" (alteration omitted) (quoting *Davidson v. Cannon*, 474 U.S. 344, 348

(1986))). Construing all inferences in favor of Plaintiff, Lerouge's statement suggests that he

knew Ebanks would attack another inmate and left the cell doors open specifically to allow him

to do so. *See Fischl v. Armitage*, 128 F.3d 50, 57–59 (2d Cir. 1997) (vacating dismissal of

Eighth Amendment claim where the record supported the inference that corrections officers

opened cell doors for the purpose of allowing other inmates to attack the plaintiff). Furthermore,

even if Plaintiff's allegations of prior incidents involving Ebanks are not enough to establish that

Defendants were on notice of a substantial risk to Plaintiff, (*see* Am. Compl. ¶ 21), Lerouge's

statement permits the inference that he was aware that Ebanks specifically intended to harm

other inmates, and acted in violation of ICP policy to enable Ebanks to do so. Plaintiff therefore

has sufficiently alleged that Lerouge was both "aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and . . . [drew] the inference." *Farmer*, 511

U.S. at 837. Defendants' Motion To Dismiss the Eighth Amendment claim against Lerouge is

therefore denied.[1]

### 3. Fourteenth Amendment

The Amended Complaint alleges a claim under the Fourteenth Amendment. (Am.

Compl. ¶ 3.) However, it is unclear whether Plaintiff is claiming a violation of procedural or

substantive due process, or both. To the extent that the Amended Complaint alleges a violation

of substantive due process, it falls under Plaintiff's Eighth Amendment claim for failure to

---

[1] The Court declines to consider at this time whether any Defendant is protected by qualified immunity. Defendants' qualified immunity "argument," excluding the statement of the legal standard, runs to approximately half a page and fails to meaningfully apply the qualified immunity caselaw to this case, instead merely reiterating Defendants' position that Plaintiff has not sufficiently alleged personal involvement or awareness of a risk to Plaintiff on the part of Defendants, arguments the Court has already rejected with respect to Lerouge. (*See* Defs.' Mem. 18–19.)

protect and deliberate indifference, which is addressed above. Because Plaintiff's claim "is covered by . . . [the] Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998); *see also Kia P. v. McIntyre*, 235 F.3d 749, 757–58 (2d Cir. 2000) ("Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." (alterations and quotation marks omitted)). Because Plaintiff does not allege any separate conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," the Court concludes that Plaintiff's substantive due process claim is "subsumed in [his] more particularized allegations" regarding his Eighth Amendment claim. *Velez v. Levy*, 401 F.3d 75, 93–94 (2d Cir. 2005) (quoting *Lewis*, 523 U.S. at 847 n.8).[2] Accordingly, Plaintiff's substantive due process claim is dismissed.

---

[2] The Second Circuit recently held that deliberate indifference claims under the Due Process Clause of the Fourteenth Amendment are analyzed differently than the same claims under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). However, the Second Circuit limited its holding to pretrial detainees, who "have not been convicted of a crime and thus may not be punished in any manner." *Id.* at 29 (citation and quotation marks omitted); *see also id.* at 33–34 (relying on the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), which analyzed excessive force claims by pretrial detainees under the Fourteenth Amendment); *McCray v. Lee*, No. 16-CV-1730, 2017 WL 2275024, at *4 (S.D.N.Y. May 24, 2017) ("The status of a plaintiff as either a convicted prisoner or pretrial detainee dictates whether his conditions of confinement are analyzed under the Eighth or Fourteenth Amendment. . . . While the decision in *Darnell* set forth a new analysis for claims brought by pretrial detainees, the analysis under the Eighth Amendment remains intact." (citation omitted)). Plaintiff was not a pretrial detainee at the relevant time. (Am. Compl. ¶ 7.) In any event, *Darnell* maintained that "any § 1983 claim for a violation of due process requires proof of a mens rea greater than mere negligence." 849 F.3d at 36 (italics omitted). Thus, to the extent Plaintiff's substantive due process deliberate indifference claim is not subsumed by his Eighth Amendment deliberate indifference claim, it still fails, because, as explained above, Plaintiff has not plausibly alleged that Defendants, with the exception of Lerouge, acted with more than mere negligence. *See Farmer*, 511 U.S. at 834 (explaining that the defendant must act

To the extent the Amended Complaint alleges a procedural due process claim, it is most plausibly based on Quick's delay in processing Plaintiff's grievance.  (Am. Compl. ¶¶ 28–29.) "[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (quotation marks omitted).  "It is well-established that prison grievance procedures do not create a due-process-protected liberty interest."  *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011), *aff'd*, 548 F. App'x 29 (2d Cir. 2013); *see also Kotler v. Boley*, No. 17-CV-239, 2018 WL 4682026, at *5 (S.D.N.Y. Sept. 28, 2018) (dismissing "[the] [p]laintiff's claim that [the] [d]efendant . . . violated his right to due process by interfering with the grievance process and making it extremely difficult for [the] [p]laintiff to file a grievance in this matter," because "inmates do not have a protected liberty interest in the processing of their prison grievances" (alterations and quotation marks omitted)); *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment.").  Nor does Plaintiff possess a protected liberty interest in having Defendants follow prison policy, as discussed in the Court's Opinion.  (*See* Opinion 26.)  *See also Holland v. City of New York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) ("An alleged violation of a prison policy, directive, or regulation, in and of itself, does not give rise to a federal claim, because 'federal constitutional standards rather than state law define the requirements of procedural due process.'" (alterations omitted) (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990))); *Rivera v. Wohlrab*,

---

voluntarily, not accidentally, indifferent to a serious risk).  With respect to Lerouge, Plaintiff's substantive due process claim is clearly subsumed within his Eighth Amendment claim, which the Court has already ruled is sufficiently pleaded.

232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("[T]he law is settled that the failure to follow a DOC[C]S Directive or prison regulation does not give rise to a federal constitutional claim."). Accordingly, Plaintiff's Fourteenth Amendment claim is dismissed.

### 4. First Amendment

Plaintiff's Amended Complaint asserts a First Amendment claim for denial of the right to petition the government. (Am. Compl. ¶ 3.) The First Amendment claim appears to be based on Quick's failure to process Plaintiff's grievance, thereby preventing him from exhausting his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and denying him the ability to bring a § 1983 suit. *See* 42 U.S.C. § 1997e(a). "The Second Circuit has held that the filing of a prison grievance is protected activity insomuch as that 'retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.'" *Rickett v. Orsino*, No. 10-CV-5152, 2013 WL 1176059, at *20 (S.D.N.Y. Feb. 20, 2013) (quoting *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996)), *adopted by* 2013 WL 1155354 (S.D.N.Y. Mar. 21, 2013); *see also McCloud v. Kane*, 491 F. Supp. 2d 312, 317 (E.D.N.Y.2007) ("The Second Circuit has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances and is actionable under [§] 1983." (citing *Graham*, 89 F.3d at 80)). However, "[t]o the extent Plaintiff alleges a stand-alone claim involving interference with his access to [prison] grievance procedures, such a claim is not cognizable under [§] 1983." *Rickett*, 2013 WL 1176059, at *20; *see also Mimms*, 2011 WL 2360059, at *10 (collecting cases); *Johnson v. Barney*, No. 04-CV-10204, 2007 WL 900977, at *1 (S.D.N.Y. Mar. 22, 2007) ("While a prisoner's right to meaningful access to the courts is clearly protected by the First Amendment right to petition the government, the same

cannot be said for a prison grievance system." (citation omitted)).  Although "[t]he First

Amendment protects a prisoner's right to meaningful access to the courts and to petition the

government for the redress of grievances . . . inmate grievance programs created by state law are

not required by the Constitution and consequently allegations that prison officials violated those

procedures [do] not give rise to a cognizable § 1983 claim." *Harris v. Westchester Cty. Dep't of

Corr.*, No. 06-CV-2011, 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) (quotation marks

omitted).  "[I]n the event that prison officials ignore a grievance that raises constitutional claims,

the proper avenue to seek relief is the course taken by [P]laintiff here: directly petitioning the

government for redress of his claims." *Id.*; *see also Harnage v. Faneuff*, No. 15-CV-1033, 2017

WL 6629297, at *10 (D. Conn. Nov. 29, 2017) ("[A]lthough the plaintiff alleges that the

defendants interfered with his ability to utilize the prison grievance procedures, such interference

does not necessarily prevent a prisoner from filing a lawsuit.  Failure to exhaust administrative

remedies is an affirmative defense that can be waived." (citing *Jones v. Bock*, 549 U.S. 199, 212

(2007))).

Plaintiff alleges that he filed a grievance with Quick, and that it was ignored and

ultimately returned to him as untimely.  Although this may violate prison grievance procedures,

Plaintiff has not been prevented from petitioning the government for redress, as evidenced by the

existence of this lawsuit.[3]  Accordingly, Plaintiff's First Amendment claim is dismissed.

---

[3] Although Defendants have raised failure to exhaust administrative remedies as a
defense, and may do so again at the summary judgment stage, this defense only prevails on a
motion to dismiss if failure to exhaust is "clear on the face" of the Amended Complaint.  *Brinson
v. Kirby Forensic Psych. Ctr.*, No. 16-CV-1625, 2018 WL 4680021, at *6 (S.D.N.Y. Sept. 28,
2018) (citations omitted).  Here, the Court cannot say that it is apparent from the Amended
Complaint that this defense will prevail as a matter of law.  There is an exception to the PLRA
exhaustion requirement where grievance procedures were effectively made unavailable by prison
officials.  *See Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (noting that an administrative
procedure may be unavailable "when prison administrators thwart inmates from taking

### 5.  ADA Claim

Plaintiff also alleges that Defendants "interfered with [Plaintiff's] residential mental health care" in violation of the ADA because "their conduct causing [Plaintiff's] injuries caused him to downward spiral, suffer shock, and deep depression in fear of HIV infection and permanent disfigurement of his face."  (Am. Compl. ¶ 37.)[4]

First, "[i]nsofar as [Plaintiff] is suing the individual [D]efendants in their individual capacities, . . . the ADA . . . [does not] provide[] for individual capacity suits against state officials."  *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *see*

---

advantage of a grievance process through machination, misrepresentation, or intimidation");
*Brownell v. Krom*, 446 F.3d 305, 311–12 (2d Cir. 2006) (noting that when a plaintiff seeks to counter a failure-to-exhaust defense, courts must ask "whether administrative remedies were in fact 'available' to the prisoner . . . whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense . . . [and] whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements" (quotation marks omitted)); *see also Albritton v. Morris*, No. 13-CV-3708, 2018 WL 1609526, at *12 (S.D.N.Y. Mar. 29, 2018) (same).  Should Defendants again raise failure to exhaust as an affirmative defense, Plaintiff is free to argue that Quick prevented him from properly exhausting his administrative remedies.  *See Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *8 (S.D.N.Y. Sept. 28, 2018) (denying summary judgment based on failure to exhaust where the plaintiff "alleged that he gave his grievance to an officer . . . and his grievance was never filed"); *Harnage*, 2017 WL 6629297, at *10 ("[I]f the defendants' actions rendered the grievance procedures unavailable, the failure to exhaust institutional remedies can be excused." (citing *Ross*, 136 S. Ct. at 1860)).

[4] Plaintiff alleges violations of "the Mental Health and Americans w/ Disabilities Acts ('MHSA' & 'ADA') among other Health and Mental Health Acts of Congress."  (Am. Compl. ¶ 3, 37.)  It is not clear what statutes Plaintiff seeks to invoke other than the ADA.  To the extent Plaintiff seeks to bring claims under New York Mental Hygiene Law, *see Manhattan State Citizens' Grp., Inc. v. Bass*, 524 F. Supp. 1270, 1272 (S.D.N.Y. 1981) (noting that the New York Mental Health Act is "codified in the Mental Hygiene Law"), this statute does not confer a private right of action, *see McWilliams v. Catholic Diocese of Rochester*, 536 N.Y.S.2d 285, 286 (App. Div. 1988) ("The Mental Hygiene Law is a regulatory statute . . . .  No private cause of action is authorized for violations of the Mental Hygiene Law." (citation omitted)); *see also Lombardo v. Holanchock*, No. 07-CV-8674, 2008 WL 2543573, at *10 (S.D.N.Y. June 25, 2008) (same); *Lombardo v. Stone*, No. 99-CV-4603, 2001 WL 940559, at *5 (S.D.N.Y. Aug. 20, 2001) (same).

*also Montalvo v. Lamy*, 139 F. Supp. 3d 597, 610 (W.D.N.Y. 2015) ("Under . . . the ADA . . . ,

individuals may not be sued in their individual or personal capacity." (alteration omitted)).

Because Plaintiff is expressly suing all Defendants "in their individual capacity," (Am. Compl.

¶ 14), his claim for violation of the ADA must be dismissed.

    Second, to the extent Plaintiff's Amended Complaint, construed liberally, can be read as

seeking prospective injunctive relief against Defendants, (*see* Am. Compl. 8 (seeking "such other

and further relief as this Court deem just and proper")), such a claim can proceed against

Defendants in their official capacities only, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).[5]

However, even if Plaintiff seeks such relief, his claim still fails. "To state a claim under Title II

of the ADA, a prisoner must show: (1) he or she is a qualified individual with a disability; (2) he

or she is being excluded from participation in, or being denied the benefits of some service,

program, or activity by reason of his or her disability; and (3) the entity [that] provides the

service, program, or activity is a public entity." *Hallett v. New York State Dep't of Corr. Servs.*,

109 F. Supp. 2d 190, 198 (S.D.N.Y. 2000) (citation and quotation marks omitted).

---

[5] "Whether individuals can be sued *for damages* under the ADA or Rehabilitation Act in their *official capacities*, however, is unsettled in th[e] [Southern] District." *Jones v. Ng*, No. 14-CV-1350, 2015 WL 998467, at *10 n.20 (S.D.N.Y. Mar. 5, 2015) (emphases added). Assuming that such a claim can be brought, and even if Plaintiff brought such a claim, the claim would still fail because a plaintiff cannot recover damages against a state (or state agency or official) unless "the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." *Garcia*, 280 F.3d at 112; *accord Johnson v. Goord*, No. 01-CV-9587, 2004 WL 2199500, at *5 (S.D.N.Y. Sept. 29, 2004) (dismissing official capacity claims "under [§] 504 of the Rehabilitation Act and Title II of the ADA . . . because those laws do not provide for money damages against the state or state officials in their official capacities, absent a showing that any violation was motivated by discriminatory animus or ill will due to the disability" (citing, inter alia, *Garcia*, 280 F.3d at 108, 111–12)). Here, the Amended Complaint does not allege that Defendants acted with discriminatory animus or ill will based on any qualifying disability. (*See generally* Am. Compl.)

Even assuming Plaintiff is a "qualified individual" with a disability, and that Defendants' conduct denied Plaintiff the benefits of his mental health treatment program, Plaintiff has nowhere alleged that his mistreatment was "by reason of his . . . disability." *Id.* Accordingly, Plaintiff's ADA claim fails. *See Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (affirming summary judgment dismissing ADA claims that "do not draw their substance from any allegedly discriminatory animus against the disabled"); *see also Schnauder v. Gibens*, 679 F. App'x 8, 11 (2d Cir. 2017) (affirming dismissal of ADA claim because the plaintiff's purported disability "was not the reason he was unable to access medical services"); *Alster v. Goord*, 745 F. Supp. 2d 317, 340 (S.D.N.Y. 2010) (finding that the plaintiff failed to demonstrate that his alleged mistreatment by the defendants "occurred because of his disability" (quotation marks omitted)).

## III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted in part and denied in part. Defendants' Motion is denied with respect to Plaintiff's Eighth Amendment claims against Defendant Lerouge. Plaintiff's claims against Capra, Aitchison, Johnson, Cousins, and Quick are dismissed. Plaintiff's claims against Lerouge under the First and Fourteenth Amendments, as well as under the ADA, are also dismissed. Because this is the second adjudication of Plaintiff's claims on the merits and he has failed to state a claim, the dismissal is with prejudice. Even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013). Because the Court finds that further amendment would be futile, Plaintiff's claims are dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 67), to terminate Defendants Capra, Aitchison, Johnson, Cousins, and Quick from the docket, and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: March 14, 2019
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE